# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

FREDERICK FIELDS,

    Petitioner,

v.                                        Case Number: 08-cv-10285
                                                  Honorable Patrick J. Duggan

THOMAS BIRKETT,

    Respondent.
_____/

## OPINION AND ORDER

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on October 26, 2009.

PRESENT: THE HONORABLE PATRICK J. DUGGAN
UNITED STATES DISTRICT COURT JUDGE

Petitioner Frederick Fields filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner, a state prisoner who is currently incarcerated at the Oaks Correctional Facility in Manistee, Michigan, challenges his convictions for solicitation to commit murder and first-degree premeditated murder. Petitioner was sentenced to concurrent terms of thirty- to sixty-years imprisonment for the solicitation to commit murder conviction and life imprisonment for the first-degree murder conviction. For the reasons that follow, the Court denies Petitioner's habeas petition. The Court also declines to issue Petitioner a certificate of appealability.

**I. Background**

Petitioner's convictions in this case arise from the shooting death of his mother, Eleanor Jones, on December 15, 2000, at her home in Detroit, Michigan. Sometime late that evening, Petitioner, his co-defendant Eric Lawson, and several of their friends visited Jones's home. When Jones failed to respond to the doorbell, Petitioner entered through an unlocked side door and "discovered" Jones's body. Police were subsequently called to the scene. (June 14, 2001, Trial Tr. at 202.) Jones died from a gunshot wound and, based on the condition of her body, police believed she had been murdered between 5:00 and 6:00 P.M. (April 6, 2001, Hearing Tr. at 7.)

Around 12:30 A.M. on December 16, 2000, investigating officers transported Petitioner, Lawson, and other individuals present at the scene to the police station to be detained for questioning. (*Id.* at 25; June 7, 2001, Trial Tr. at 85.) Meanwhile at 1:00 A.M., officers remaining at the scene obtained a statement from Jones's elderly neighbor, Arrie Coleman, indicating that Jones and Petitioner had been in a fight, that Petitioner knocked over Jones's Christmas tree and stomped the ornaments, and that Jones put Petitioner out of the house. (April 6, 2001, Hearing Tr. at 7-8, 28-29.) After being advised of his *Miranda* rights around 7:00 A.M. on December 16, 2000, Petitioner told an investigating officer that he had been at his mother's home between 5:00 and 6:00 P.M. the night before.[1] (*Id.* at 31-33; March 9, 2001, Hearing Tr. at 14.) Based on this

---

[1] Petitioner also asserted that his mother was not home at that time.

2

information, Petitioner was formally placed under arrest for Jones's murder. (April 6, 2001, Hearing Tr. at 5-7.)

On December 17, 2000, Petitioner informed the investigating officers that he wanted to tell them what really happened to his mother. After being re-advised of his constitutional rights, Petitioner confessed to his involvement in the murder. Petitioner explained that, after fighting with his mother on December 7, 2000, he had gone to Lawson's home and complained. In a joking manner, Lawson offered to kill Jones for $500. After further discussion, Petitioner paid Lawson $250 to do it. On December 10, 2000, Petitioner got into another argument with his mother and left their home to live with Lawson. Around the same time, Lawson borrowed a gun from a cousin, and Lawson and Petitioner agreed to kill Jones on December 15, 2000. (*Id.* at 12-23; June 14, 2001, Trial Tr. at 199-200, 203.)

According to their plan, Lawson dropped Petitioner at a pizza place to order pizza and create an alibi while Lawson went to kill Jones around 6:00 P.M. on December 15, 2000. Petitioner made sure his receipt reflected the time of his purchase. At Jones's house, Lawson knocked on the door and asked to use the phone because of car troubles. Jones let Lawson in and Lawson shot Jones while he pretended to talk on the phone. Lawson then returned to the pizza place to eat with Petitioner. After eating, Petitioner and Lawson went to hang out at a friend's house. Around 9:30 P.M., Petitioner, Lawson, and some of their friends went to pick up another friend from work. On their way back, the group stopped at Jones's home where they found her dead on the floor. (June 14,

3

2001, Trial Tr. at 200-05.)

Petitioner and Lawson were charged for their involvement in the murder. Both were seventeen-years-old at the time of the offense. Prior to trial, Petitioner's counsel filed a motion to suppress Petitioner's confession on grounds that it was product of an unlawful arrest. After conducting an evidentiary hearing, the trial court found the statement admissible. (May 18, 2001, Hearing Tr. at 14.)

At trial, the prosecution called numerous witnesses, one of whom read Petitioner's confession into the record. Another six prosecution witnesses testified that Jones had complained to them about the fighting, including the Christmas tree incident, that occurred between her and Petitioner in the week before her murder.[2] Two of those witnesses—Jones's best friend Kathy Clerk and cousin Curtis Beamon—also testified that Jones had informed them, "If anything happens to me, it's [Petitioner]." (June 7, 2001, Trial Tr. at 48; June 12, 2001, Trial Tr. at 21.) The prosecution also called Eric Davis, a prisoner who had been detained at police headquarters at the same time as Lawson and Petitioner on unrelated crimes. Davis testified Lawson told him that Petitioner had paid him $250 to kill Jones. Davis used his phone privileges to assist Lawson in relaying a message to a friend to get rid of an object that Lawson later explained was a gun. (June 14, 2001, Trial Tr. at 58-73.) Petitioner's attorney sought to compel the prosecution to

---

[2]The six witnesses were Jones's cousin, Dorothea Ada Roney; Jones's best friend, Kathy Clerk; Jones's Supervisor, Laura Kathleen Witkowski; Jones's co-worker, Carl Gooden; Jones's cousin, Curtis Beamon; and Jones's neighbor, Carol Bailey.

call Jones's neighbor, Coleman, to testify, but the trial court excused her for medical reasons.

The jury ultimately found Petitioner guilty of the above-stated charges and Petitioner was sentenced on July 17, 2001. Following his sentencing, Petitioner filed an appeal of right with the Michigan Court of Appeals, raising five issues including the admission of his confession, the admission of some of his mother's statements, the admission of Lawson's confession to Davis, and the trial court's failure to require Coleman to testify. On November 13, 2003, the Michigan Court of Appeals issued an unpublished per curiam opinion affirming Petitioner's convictions and sentences. *People v. Fields*, No. 237176, 2003 WL 22681571 (Mich. Ct. App. Nov. 13, 2003).

Petitioner then filed an application for leave to appeal that decision with the Michigan Supreme Court, raising the same five issues as raised in the Court of Appeals and adding two additional issues. On September 16, 2004, the Michigan Supreme Court entered an order denying Petitioner's application. *People v. Fields*, 471 Mich. 876, 688 N.W.2d 498 (2004). Petitioner did not file a writ of certiorari with the United States Supreme Court.

Petitioner did, however, file a motion for relief from judgment with the Wayne County Circuit Court under Mich. Ct. R. 6.508(D), again challenging the admission of his mother's statements, the admission of Lawson's confession to Davis, and the trial court's failure to require Coleman to testify. Petitioner sought reconsideration of those issues in light of the Supreme Court's holding in *Crawford v. Washington*, 541 U.S. 36, 124 S. Ct.

5

1354 (2004).  On January 18, 2006, the Wayne County Circuit Court issued an opinion and order denying Petitioner's motion for relief from judgment.  *People v. Fields*, No. 01-000516-02 (Wayne County Circuit Court, Jan. 18, 2006).  Petitioner filed an application for leave to appeal that decision with both state appellate courts.  Both applications were denied.  *People v. Fields*, No. 274140 (Mich.Ct.App. May 8, 2007); *People v. Fields*, 480 Mich. 889, 738 N.W.2d 730 (2007).

Petitioner filed this habeas petition on January 18, 2008, and in February 2008 filed an amended petition.  In his petition, Petitioner raises the following claims:

I. Petitioner's custodial statement should not have been ruled admissible because it was the product of an unlawful arrest which was not supported by probable cause.

II. Petitioner's right of due process and confrontation under the United States constitution were violated by the admission of hearsay statements allegedly made by the deceased and the non-testifying co-defendant.

III. Petitioner's right to due process and confrontation were violated by the admission of out-of-court testimonial statement of an endorsed witness.

IV. Petitioner's right to a fair trial was violated when the trial court erred reversibly by failing to make an adequate inquiry concerning the availability of an endorsed witness which Petitioner wanted produced violating his right to due process of law.

**II. Standard of Review**

The Antiterrorism and Effective Death Penalty Act ("AEDPA"), which is applicable to Petitioner's request for habeas relief, provides in relevant part:

6

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Simply stated, under Section 2254(d), Petitioner must show that the state court's decision "was either contrary to, or an unreasonable application of, [the Supreme] Court's clearly established precedents, or was based upon an unreasonable determination of the facts." *Price v. Vincent*, 538 U.S. 634, 639, 123 S. Ct. 1848, 1852-53 (2003).

A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13, 120 S. Ct. 1495, 1523 (2000). A state court's decision is an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*, 529 U.S. at 413, 120 S. Ct. at 1523.

### III. Admission of Petitioner's Confession

In his first habeas claim, Petitioner contends that his Fourth Amendment rights

7

were violated because his confession to the police was the result of an unlawful arrest. In other words, Petitioner argues that his confession should have been suppressed as a poisonous fruit of an unlawful arrest. Federal habeas review of a petitioner's arrest or search by state police is barred "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim." *Stone v. Powell*, 428 U.S. 465, 494, 96 S. Ct. 3037, 3052 (1976); *Machacek v. Hofbauer*, 213 F.3d 947, 952 (6th Cir. 2000). Such an opportunity existed if the state provided, in the abstract, a mechanism by which a petitioner could raise the claim, and so long as presentation of the claim was not frustrated by a failure of that mechanism. *Riley v. Gray*, 674 F.2d 522, 526 (6th Cir. 1982).

In undertaking this analysis "[t]he relevant inquiry is whether a habeas petitioner had an opportunity to litigate his claims, not whether he in fact did so or even whether the Fourth Amendment claim was correctly decided." *Wynne v. Renico*, 279 F. Supp. 2d 866, 892 (E.D. Mich. 2003). On federal habeas review, then, "a federal court cannot re-examine a petitioner's Fourth Amendment claim that post-arrest statements should have been suppressed as 'poisonous fruit' of his illegal arrest, if the state provided an opportunity for full and fair litigation of the habeas petitioner's Fourth Amendment claim prior to trial." *Walendzinski v. Renico*, 354 F. Supp. 2d 752, 759 (E.D. Mich. 2005).

As stated by other courts in this district, "Michigan has a procedural mechanism which presents an adequate opportunity for a criminal defendant to raise a Fourth Amendment claim." *Robinson v. Jackson*, 366 F. Supp. 2d 524, 527 (E.D. Mich. 2005).

This procedural mechanism is a pre-trial motion to suppress. *See People v. Ferguson*, 376 Mich. 90, 93-94, 135 N.W.2d 357, 358-59 (1965) (describing the availability of a pre-trial motion to suppress); *see also People v. Harris*, 95 Mich. App. 507, 509, 291 N.W.2d 97, 99 (1980) (analyzing the legality of a warrantless search, seizure, and arrest even though raised for the first time on appeal). Therefore Petitioner is entitled to relief on this issue only if he establishes that he was prevented from litigating the Fourth Amendment issue by a failure of Michigan's procedural mechanism.

In this case, the record reveals that Petitioner challenged the propriety of his arrest and subsequent confession by filing a motion to suppress prior to trial. The state trial court conducted an evidentiary hearing and denied the motion. The Michigan Court of Appeals affirmed the trial court's decision after conducting a *de novo* review, *People v. Fields*, No. 237176, 2003 WL 22681571, at *1 (Mich. Ct. App. Nov. 13, 2003), and the Michigan Supreme Court denied Petitioner leave to appeal the issue. *People v. Fields*, 471 Mich. 876, 688 N.W.2d 498 (2004). Given this record, it is clear that the Michigan courts were cognizant of Petitioner's Fourth Amendment claim and that he received all the process he was due. *See Machacek*, 213 F.3d at 952; *Monroe v. Smith*, 197 F. Supp. 2d 753, 766 (E.D. Mich. 2001).

Nonetheless, Petitioner also argues, in reliance on *Gamble v. Oklahoma*, 583 F.2d 1161 (10th Cir. 1978), that he is entitled to relief on his Fourth Amendment claim because the state courts committed error when they applied Fourth Amendment principles to his case. The Sixth Circuit has rejected *Gamble*, however, insofar as that case suggests that

9

district courts, as a matter of course, should inquire into the correctness of state court decisions. *Riley*, 674 F.2d at 526. And, to the extent this Court *is* permitted to consider whether the state courts committed "egregious error," *see id.*, Petitioner has not explained why he should be granted relief. In concluding that Petitioner's confession could be admitted, the state courts reasoned that the confession had been sufficiently attenuated from any unlawful arrest by an intervening and independent discovery of evidence sufficient to establish probable cause as well as by the passage of more than 24-hours between any unlawful arrest and the confession. *Fields*, 2003 WL 22681571, at *1. Because there is no indication that the state courts' resolution of this issue amounted to egregious error, *see Mosby v. Senkowski*, 470 F.3d 515, 522-23 (2d Cir. 2006),[3] Petitioner is not entitled to relief on this claim.

## IV. Petitioner's Right to Confrontation

The Court addresses Petitioner's second and third claims together, as the claims are related. Between the two claims, Petitioner alleges that his right to confront the witnesses against him was violated on three separate occasions during his trial. The analysis of Confrontation Clause challenges begins with the Sixth Amendment of the United States Constitution, which guarantees criminal defendants the right to physically confront and cross-examine adverse witnesses at trial. *Illinois v. Allen*, 397 U.S. 337,

---

[3]*Mosby* discusses the admissibility of a confession after an illegal arrest where a significant amount of time elapses between the arrest and confession and where there is an intervening discovery of incriminating evidence.

338, 90 S. Ct. 1057, 1058 (1970). The right of confrontation extends to state prosecutions through the due process clause of the Fourteenth Amendment. *See Pointer v. Texas*, 380 U.S. 400, 403, 85 S. Ct. 1065, 1068 (1965).

As formulated by the Supreme Court, the Confrontation Clause bars the admission of testimonial statements of a witness who does not appear at trial, unless the witness is unavailable to testify and the defendant had a prior opportunity for cross-examination. *Crawford v. Washington*, 541 U.S. 36, 53-54, 124 S. Ct. 1354, 1365 (2004). Although there is currently no definitive definition of the term "testimonial statement," the Supreme Court explained that the Confrontation Clause focuses on "'witnesses' against the accused—in other words, those who 'bear testimony.' 'Testimony,' in turn, is typically '[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact.'" *Id.*, 541 U.S. at 51, 124 S. Ct. at 1364 (quoting 2 N. Webster, An American Dictionary of the English Language (1828)). Under these guidelines, "[a]n accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not." *Id.*

**A. The Murder Victim's Statements**

As the first alleged Confrontation Clause violation, Petitioner takes issue with the admission of Ms. Jones's statement that, if anything happened to her, Petitioner did it. Ms. Jones's allegedly made this statement twice in the week leading to her murder, once to her best friend Kathy Clerk on December 13, 2001, and once to her cousin Curtis Beamon on December 14, 2001. (June 7, 2001, Trial Tr. at 48; June 12, 2001, Trial Tr. at

11

21.) Despite Petitioner's assertion to the contrary, Ms. Jones's statement is not "testimonial" because, in both instances, Ms. Jones made the statement in casual conversation to personal acquaintances. *See United States v. Pugh*, 273 Fed. Appx. 449, 454 (6th Cir. April 9, 2008) (noting that a statement made during a private, casual conversation is not testimonial). Consequently, the admission of Ms. Jones's statement through the testimony of Clerk and Beamon did not violate Petitioner's Confrontation Clause rights. *See Jackson v. McKee*, 525 F.3d 430, 438 (6th Cir. 2008) ("[T]he Confrontation Clause does not prevent the admission of non-testimonial hearsay.").

**B. The Co-Defendant's Statements**

Petitioner's second confrontation claim fails for the same reason. Petitioner asserts that his rights were violated when the prosecution introduced the confession of co-defendant Lawson through the testimony of Eric Davis. Lawson allegedly made incriminating statements implicating himself and Petitioner in Ms. Jones's murder while he and Davis were being held in adjoining jail cells. (June 14, 2001, Trial Tr. at 58-68.) Davis was not serving as a police informant at the time of Lawson's statements. Under the circumstances, then, Lawson's statements were made in casual conversation with an acquaintance; the statements were not solemn declarations made for the purpose of proving his and Petitioner's involvement in the murder. Thus, the Court concludes that the admission of Lawson's statement to Davis did not violate Petitioner's confrontation

rights.[4]

## C. Statements by the Murder Victim's Elderly Neighbor

Finally, Petitioner argues that his confrontation rights were violated as a result of the admission of Arrie Coleman's statement to police that Jones and Petitioner had been in a fight, that Petitioner knocked over Jones's Christmas tree and stomped the ornaments, and that Jones put Petitioner out of the house. While this information factored into the trial court's decision to admit Petitioner's confession,[5] Coleman never actually testified at trial. Because the statements were not admitted at trial, they cannot form the basis of a Confrontation Clause violation.[6]

To the extent Petitioner seeks to challenge these same issues under the Michigan Rules of Evidence related to hearsay testimony, his claims are not cognizable on habeas review. The extraordinary remedy of habeas corpus lies only for a "violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). An inquiry

---

[4]Even if Jones's statement and Lawson's confession were considered testimonial, Petitioner would not be entitled to relief. Violations of the Confrontation Clause are subject to harmless error analysis. *Delaware v. Van Arsdall*, 475 U.S. 673, 684, 106 S. Ct. 1431, 1438 (1986). Even without the challenged statements, the prosecution had a very strong case against Petitioner. As noted above, several witnesses testified to the troubled relationship between Petitioner and his mother and Petitioner himself confessed to the crime.

[5]Coleman's disclosure was the independent and intervening evidence that provided attenuation between any unlawful arrest and Petitioner's subsequent confession. *Fields*, 2003 WL 22681571, at *1.

[6]Additionally, the Confrontation Clause does not require the prosecution to call all the witnesses it has against a defendant. *United State v. Moore*, 954 F.2d 379, 381 (6th Cir. 1992).

13

whether evidence was properly admitted or improperly excluded under state law "is no part of the federal court's habeas review of a state conviction . . . . [I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S. Ct. 475, 480 (1991). For these reasons, Petitioner is not entitled to habeas relief on the basis of his second and third claims.

**V. Right to Present a Defense**

Petitioner's final habeas claim is an extension of his prior argument. Petitioner alleges that he was deprived of his constitutional right to present a defense due to the trial court's decision to excuse Coleman from testifying at trial. The Sixth Amendment provides a defendant with the right to process to obtain witnesses in his favor and to confront the witnesses against him, and the Fourteenth Amendment guarantees a defendant due process of law. U.S. Const. amend. VI, XIV, § 1. Implicit in these provisions is the right to present a meaningful defense and "[t]his right is a fundamental element of due process of law." *Washington v. Texas*, 388 U.S. 14, 19, 87 S. Ct. 1920, 1923 (1967). Even so, the right to present a defense is not absolute; it must yield to other constitutional rights, *see, e.g.*, *United States v. Trejo-Zambrano*, 582 F.2d 460, 464 (9th Cir. 1978) ("The Sixth Amendment right of an accused to compulsory process to secure attendance of a witness does not include the right to compel the witness to waive his Fifth Amendment privilege."), and to other legitimate demands of the criminal justice system, *see United States v. Scheffer*, 523 U.S. 303, 308, 118 S. Ct. 1261, 1264 (1998).

To constitute a denial of the right to present a defense, a trial court's exclusion of

14

evidence must "infringe[ ] upon a weighty interest of the accused." *Id.* A "weighty interest of the accused" is infringed where "the exclusion of evidence seriously undermine[s] 'fundamental elements of the defendant's defense' against the crime charged." *Miskel v. Karnes*, 397 F.3d 446, 455 (6th Cir. 2005) (quoting *Scheffer*, 523 U.S. at 315, 118 S. Ct. at 1268). Thus, "'[w]hether the exclusion of [witnesses'] testimony violated [Petitioner's] right to present a defense depends upon whether the omitted evidence [evaluated in the context of the entire record] creates a reasonable doubt that did not otherwise exist.'" *United States v. Blackwell*, 459 F.3d 739, 753 (6th Cir. 2006) (quoting *Washington v. Schriver*, 255 F.3d 45, 57 (2d Cir. 2001)); *see also United States v. Valenzuela-Bernal*, 458 U.S. 858, 873, 102 S. Ct. 3440, 3449 (1982) ("[A] violation of the Compulsory Process Clause of the Sixth Amendment or the Due Process Clause of the Sixth Amendment . . . requires some showing that the evidence lost would be both material and favorable to the defense.").

Petitioner argues that, when the trial court excused Coleman from testifying,[7] his ability to present evidence regarding his unlawful arrest and subsequent confession was unconstitutionally restricted. Specifically, Petitioner complains that "[t]he jury never received evidence as to why [he] was arrested or whether there was probable cause to."

---

[7]The trial court excused Coleman from testifying because "it would [have been] detrimental to the health of this neighbor who was 'eighty-plus-years-old' to testify at trial. According to her doctors' letters, the witness has a history of breast cancer, diabetes, and hypertensive cardiovascular disease, must eat frequent small meals due to the diabetes, and must avoid stress that would cause fluctuations in her blood pressure and heart rate." *Fields*, 2003 WL 22681571, at *5.

(Habeas Pet. at 39.) Whether Petitioner was lawfully arrested and whether his subsequent confession was admissible, however, were not questions before the jury. *See People v. Walker (On Rehearing)*, 374 Mich. 331, 337-38, 132 N.W.2d 87, 91 (1965). Furthermore, Coleman's testimony would not have been favorable to Petitioner's defense; Coleman's description of Jones's statements before the murder would have only corroborated the portions of Petitioner's confession where he described his frustrations with his mother. (*See* June 14, 2001, Trial Tr. At 199.) Finally, Petitioner cannot use this claim and the fact that Coleman's statements were considered during the pre-trial motion to suppress to circumvent the limited review of his Fourth Amendment claim discussed above. Therefore, the Court finds that Petitioner has failed to establish that the state court adjudications of this claim were either contrary to, or an unreasonable application of, clearly established United States Supreme Court precedent, or an unreasonable determination of the facts.

## VI. Certificate of Appealability

A petitioner must receive a certificate of appealability ("COA") in order to appeal the denial of a habeas petition for relief from either a state or federal conviction. 28 U.S.C. §§ 2253(c)(1)(A), (B). A district court, in its discretion, may decide whether to issue a COA at the time the court rules on a petition for a writ of habeas corpus or may wait until a notice of appeal is filed to make such a determination. *See Castro v. United States*, 310 F.3d 900, 903 (6th Cir. 2002); *Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1072 (6th Cir. 1997), *overruled in part on other grounds by Lindh v. Murphy*, 521

U.S. 320 (1997). In denying the habeas petition, the court has studied the case record and the relevant law, and concludes that, as a result, it is presently in the best position to decide whether to issue a COA. *See Castro*, 310 F.3d at 901 (quoting *Lyons*, 105 F.3d at 1072 ("[A] district judge who has just denied a habeas petition . . . . will have an intimate knowledge of both the record and the relevant law and could simply determine whether to issue the certificate of appealability when she denies the initial petition.")).

A court may issue a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S. Ct. 1595, 1603-04 (2000) (quotation omitted). In this case, the Court concludes that reasonable jurists would not debate the Court's the dismissal of Petitioner's petition for the aforementioned reasons. Therefore, the Court denies Petitioner a COA.

**VII. Conclusion**

For the reasons stated, the Court concludes that Petitioner is not entitled to habeas relief on the claims as outlined in the petition. Accordingly, the Court **DENIES WITH PREJUDICE** the petition for writ of habeas corpus.

**IT IS FURTHER ORDERED** that the Court **DECLINES** to issue Petitioner a certificate of appealability.

**IT IS SO ORDERED**.

                                                  s/PATRICK J. DUGGAN
                                                UNITED STATES DISTRICT JUDGE

Copies To:
Frederick Fields
#372350
Oaks Correctional Facility
1500 Caberfae Highway
Manistee, MI 49660

Andrew L. Shirvell, A.A.G.